UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
Cal Bar Number 171701
11620 Wilshire Blvd. Ste. 900
Los Angeles, California 90025
Tele 310.887.1837
Email joe@ulawoffices.com

Attorneys for Plaintiff, JOSEPH R. MEEHAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH R. MEEHAN,<br><br>Plaintiff,<br><br>vs.<br><br>ALLISON WOODARD,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL<br><br>1. Libel<br>2. Libel Per Se<br>3. Trade Libel<br>4. False Light<br>5. Intentional Infliction of Emotional Distress<br>6. Negligent Infliction of Emotional Distress<br>7. Permanent Injunction<br>8. Declaratory Relief |

Plaintiff, JOSEPH R. MEEHAN, an individual, hereby, by and through his counsel of record, allege as follows:

## I. JURISDICTION AND VENUE

1. This court has original jurisdiction under 28 U.S.C. §1332, because all Plaintiffs are citizens of the state of California and defendant are citizens of states other than the state of California.  Additionally, the amount in controversy in this matter exceeds $75,000.00, exclusive of costs and interests as more specifically plead *infra*.

2. Venue is proper under U.S.C. §1391(b)(2), because a substantial amount of the events and omissions giving rise to the claim occurred in the Central District of California, and otherwise were knowingly directed at harming a citizen of the State of California and the citizen's ability to take part in his occupation within the State of California, as more specifically plead *infra*.

## II. PARTIES

3. Plaintiff, JOSEPH R. MEEHAN (**Meehan** or **Plaintiff**) is, and was, at all times relevant, domiciled in Los Angeles, California and thus a citizen of California. Plaintiff is referred to in the complaint herein by "Joey Ryan" which is one of Plaintiff's professional wrestling pseudonym or persona.

4. Defendant, Allison Woodard (**Woodard**) is, and was, at all relevant times, domiciled in the State of Texas and thus a citizen of the State of Texas.

## III. FACTS COMMON TO ALL CLAIMS

5. In early 2000, Plaintiff began training to become a professional wrestler of the kind that is a theatrical performance as opposed to the competitive Olympic style Greco-Roman and freestyle wrestling.

6. Before making his debut, Plaintiff spent approximately seven months training, which included fitness training, learning wrestling moves and learning how to develop a character and persona that an audience would find entertaining, among other things.

7. Plaintiff made his professional wrestling debut on or about September 2000.

8. Plaintiff wrestled using various names, personas and characters, with his most notable being that of "Joey Ryan". The character and persona of "Joey Ryan" was created and used in wrestling shows by Plaintiff beginning on or about 2001.

Complaint for Damages and
Demand for Jury Trial

9. Plaintiff was also involved in wrestling promotions and in one instance was one of six founders of a successful Southern California promotions called Pro Wrestling Guerrilla, known as "PWG".

10.    Plaintiff formed and is the principal of "Bar Wrestling" wherein the wrestling shows promoted by Bar Wrestling would be held in various bars in Southern California, including and notably, a popular establishment called the Bootleg Theater in Los Angeles that is also a popular social venue, American Legion Hall in Baldwin Park and Glass House in Pomona.

11.    Any and all persons, including defendant, who know Plaintiff and the wrestling character "Joey Ryan", knows that the two are related to, associated with, principals of and owners and promoters of Bar Wrestling and that Bar Wrestling is a Los Angeles, California based promotion that operates in Los Angeles, California.

12.    In addition to promotions, Plaintiff is, and was, a talented and entertaining wrestler and has made wrestling appearances in some of the more nationally recognized promotions, including World Wrestling Entertainment (**WWE**) and Ring of Honor (**ROH**), Lucha Underground (**Lucha)** and Impact Wrestling (**Impact**).

13.    Through the years "Joey Ryan" became a popular wrestling character and thus on or about 2011, ten years after Plaintiff's creation of "Joey Ryan", Plaintiff produced merchandise that Plaintiff would sell at wrestling shows and on his website, for example, socks, t-shirts, sweatshirts, hats, toys, pins, comic books, autograph pictures, etc. that depict the "Joey Ryan" likeness, posed and in action.

14.    Having the ability to derive income from selling merchandise is one of the goals of professional wrestlers and is common for professional wrestlers after the wrestler achieves a higher level of popularity, which

would be a market indicator on determining the probability of success of merchandise sales and justify incurring the cost of production.

15.    For the past twenty years, Plaintiff spent a great deal of resources, including, time and money, in promoting himself as a wrestler and promoting his wrestling shows, including Bar Wrestling, as well as developing innovative ways to keep his wrestling character "Joey Ryan" popular and/or interesting to the wrestling community.

16.    The popularity of a wrestler may be determined by how many persons are interested in the wrestler's activities and thoughts. Over the last fifteen years or so "social networking" or "social media" applications and websites have been one of the go-to indicators of the level of popularity and public interest in persons and subject matters.

17.    Plaintiff has performed in twelve different countries and over half of the United States. Beginning in 2016, Plaintiff's popularity and interest have grown to performing in more than two hundred events per year.

18.    Twitter is a social networking or social media service where users can publish or post messages and statements in order to interact with other users. The messages are called "tweets". Registered users can publish or post messages and statements, but non-registered users can only read them. Unless the registered users change the default setting, tweets can be read by any person who can access twitter.com. That is to say Twitter is not an application that is meant to make the user's messages more private. In the instant case the defendant had, and has, her Twitter messages, i.e., tweets, retweets, replies, and likes, accessible and displayed to any person who can access Twitter.

19.    Twitter also permits account holders to "follow" each other so that each user can be directly notified of posts made by other accountholders.

20.     Twitter explains what a "Like" is in its "Help Center" webpage, "Likes are represented by a small heart and are used to show appreciation for a Tweet. You can view the Tweets you've liked from your profile page by clicking or tapping into the Likes tab."

21.     Twitter explains what a "Retweet" is in its "Help Center" webpage, "A Retweet is a re-posting of a Tweet. Twitter's Retweet feature helps you and others quickly share that Tweet with all of your followers. You can Retweet your own Tweets or Tweets from someone else. Sometimes people type 'RT' at the beginning of a Tweet to indicate that they are re-posting someone else's content. This isn't an official Twitter command or feature, but signifies that they are quoting another person's Tweet." As such, resending messages to the public and other users are made by the volitional act of the Twitter accountholder. Defendant's retweets were made by the volitional act of the defendant.

22.     Generally, a hashtag, i.e., "#", that is followed by specific characters make content more discoverable on social media platforms and assist in engaging with other social media users based on a common theme or interest. Clicking on or searching any hashtag directs a user to every social media post using the same hashtag, whether Twitter, Instagram, Facebook, etc. Twitter explains what a hashtag is in its "Help Center" webpage,

> A hashtag—written with a # symbol—is used to index keywords or topics on Twitter. This function was created on Twitter, and allows people to easily follow topics they are interested in.
> Using hashtags to categorize Tweets by keyword
> •     People use the hashtag symbol (#) before a relevant keyword or phrase in their Tweet to categorize those Tweets and help them show more easily in Twitter search.

- Clicking or tapping on a hashtagged word in any message shows you other Tweets that include that hashtag.
- Hashtags can be included anywhere in a Tweet.
- Hashtagged words that become very popular are often trending topics.

23.   Instagram is another social networking or social media service that allows users to upload videos and photos and uses hashtags to connect users in the same manner as Twitter. When one user wants to check on and routinely get updates on another Instagram account holder, the user can "follow" another Instagram user, much like Twitter.

24.   Instagram uses what it calls "stories" for Instagram accountholders to more closely directly connect with their followers. Stories are posts of videos, photos and statements made by the Instagram account holder that are made directly available to the Instagram accountholder's followers and remain available for twenty-four hours. After an item is posted to the accountholder's story, those following are notified of the story post.

25.   Up until June 2020 Plaintiff had 157,000 followers on his Instagram account and 143,000 followers on his Twitter account.

26.   Plaintiff has a Twitter "handle" of "JoeyRyanOnline", which is to say that such is the manner in which Plaintiff is identified in his Twitter social media account. The Twitter handle is usually identified by the characters following "@". Additionally, a social media "handle" is the manner in which a person is identified in the social media application/website.

27.   In or around June 2020, "#SpeakingOut" is a social media trend and community that is being used to accuse wrestlers, promotors, personalities and journalists of sexual misconduct.

28.   Patreon is website or platform that allow artists and creators to publish content, e.g., videos', photos, etc. and also allows users to interact through chat, for example, by paying monthly membership fee. By paying

Complaint for Damages and
Demand for Jury Trial

the membership fee persons become "patrons". Plaintiff is and was a member of Patreon and does, and did, have subscribers who paid Plaintiff monthly membership fees that paid for access to Plaintiff's posted videos, photos, media, etc.

29.    Cameo is website to create income stream. As Cameo.com describes on its "Frequently Asked Questions" webpage, "Cameo operates the CAMEO™ Marketplace — through our website and app — that lets fans book a personalized video shout-out — a CAMEO video — from their favorite talent. Our mission is to create the most personalized and authentic fan experiences in the world."

30.    As to all of the defendant's conduct above and below described, specifically since defendant has published her statements on social networking sites, Plaintiff has,

a. Lost followers on his Twitter account of at least 11,000 followers and is no longer getting 1,000 followers per month as Plaintiff was prior to defendant's statements;

b. Lost followers on his Instagram account at least 8,000 followers and is no longer getting 1,000 followers per month as Plaintiff was prior to defendant's statements;

c. Lost venues for his Bar Wrestling promotions, including Bootleg Theatre in Los Angeles, American Legion Hall in Baldwin Park and Glass House in Pomona;

d. Lost revenues from Bar Wrestling in the amount of $1,500.00 per month from distribution and streaming services and $2,000.00 per event with two events per month;

e. Lost revenues from merchandising in the amount of $1,000.00 per month;

Complaint for Damages and
Demand for Jury Trial

f.  Lost revenues in his Patreon account in the amount of $3,000.00 per month;

g.  Lost revenues in his Cameo account in the amount of $500.00 per month;

h.  Lost revenues from Twitch account in the amount of $1,000.00 per month plus subscription shares and tips from subscribers;

i.  Lost revenues from Wrestling Performance Bookings of $8,000.00 to $10,000.00 per month.

### IV.  FALSE STATEMENTS MADE ABOUT PLAINTIFF

**A.**   **Allison Woodard**

31.   Defendant, Allison Woodard (**Woodard**) is also known as "Allie Kat" and performs as a professional wrestler and entertainer under the pseudonym "Allie Kat".

32.   As of September 18, 2020, Woodard had 700 "Following" and 20,000 "Followers" on her Twitter account wherein she used the handle "meowdyxyall".

33.   On or about June 22, 2020, Alexandra Gracia (Gracia) used her twitter account with the handle "alexgracia3" to post a statement on Gracia's Twitter account to add her story to the #SpeakingOut movement of a sexual assault that Gracia believes was perpetrated by Plaintiff, notwithstanding Gracia unequivocally pursuing Plaintiff romantically. Although Gracia and Plaintiff did not have a sexual encounter and there was no assault, Gracia posted her accusation and added to the popularity or the trending movement. (**Gracia Statement**)

34.   On June 22, 2020, Woodard used her Twitter account with the handle "meowdyxyall" to make the statement, "All I'm gonna say is, sounds almost identical to how my experience with him started. Theres [sic] a lot

of us." and then attached the Gracia Defamatory Statement. (**Woodard Defamatory Statement**)

35.    Immediately before making the Woodard Defamatory Statement, Woodard used her twitter account with the handle "meowdyxyall" to post a statement "Is this abuse? Is this happening to you? These are common tactics abusers used to keep you under, a thread:" and then posted what Woodard believes are the traits and characteristics of abusers. Over 1,000 replies resulted from the Woodard's post with many persons replying with their abuse and sexual assault accusation.

36.    Woodard Defamatory Statement was an accusation that Plaintiff assaulted Woodard especially since "#SpeakingOut" was part of Woodard's Defamatory Statement.

37.    Woodard implied that she had the same experience with Plaintiff as described by Gracia, for example, that Plaintiff crossed some kind of sexual boundary that Woodard had established with Plaintiff.

38.    As of September 3, 2020, Woodard Defamatory Statement was Replied to 18 times and "Retweeted" at least 71 times, with 572 "Likes".

39.    On information and belief, Woodard Defamatory Statement is available to view by any person interested or who happens upon Woodard's Twitter timeline. Also, no statement retracting Woodard Defamatory Statement has been made by Woodard.

40.    In addition, since Woodard Defamatory Statement includes the "#SpeakingOut" identifier, any person who google searches #SpeakingOut will necessarily read Woodard Defamatory Statement.

41.    Woodard Defamatory Statement is, and was, false, including that Plaintiff did not assault Woodard in any way shape or form, sexual or otherwise. Any intimate acts between Plaintiff and Woodard were made with Woodard's clear consent and was bragged about by Woodard to

other persons. Plaintiff and Woodard were involved in a sexual encounter with another woman and was unequivocally made with the consent of all person's involved.

## I. CLAIM I
### (Libel against Defendant)

42.    Plaintiff incorporates by reference paragraphs 1 through 41 as though fully set forth herein.

43.    Defendant made and published the defamatory statements as specifically described above and herein,

     a. Woodard Defamatory Statement

44.    Defendant used at least Twitter, including on and in each of her own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

45.    On information and belief, defendant did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

46.    Prior to publishing the defamatory statements, defendant was fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendant

was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

47.    Prior to publishing the defamatory statements, defendant was fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

48.    Prior to publishing the defamatory statements, defendant was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendant did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

49.    Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendant was fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

50.    Defendant was fully aware that Defendant's defamatory statements described above and incorporated by reference herein would cause a

Complaint for Damages and
Demand for Jury Trial

negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendant intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendant was fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

51.   It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

52.   Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendant to stop the publication of the defamatory statements. Defendant responded by repeating more statements that (1) Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

53.   Prior to publishing the defamatory statements, defendant knew and otherwise were fully aware that the defamatory statements were not true.

Complaint for Damages and
Demand for Jury Trial

54.     Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

55.     Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

56.     The hundreds to thousands of person who did read defendant's defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

57.     Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

    (1)The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and wrestling promotor;

    (2)The defamatory statements exposed Plaintiff to hatred, contempt,

ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3)The defamatory statements discouraged others from associating or dealing with Plaintiff.

58.   Defendant knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

59.   Defendant's defamatory statements caused Plaintiff to lose employment and income.

60.   Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

61.   Plaintiff's personal and professional reputation were harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendant continues to make the same defamatory statements as described and continues to permit the defamatory statements to go viral on social media websites.

62.   Plaintiff sustained reputational and financial harm to his businesses,

professions and occupations as a result of the defamatory statements.

63.    Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below.

## II.CLAIM II

(Libel Per Se against defendant)

64.    Plaintiff incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65.    Defendant made and published the defamatory statements as specifically described above, which among other things falsely accused Plaintiff of committing a crime that was a felony, e.g., rape, assault, and sexual battery, and accused Plaintiff of being unfit and incompetent to practice in his profession as a professional wrestler and wrestling promotor.

66.    Defendant made and published the defamatory statements as specifically described above and herein,

a. Woodard Defamatory Statement

67.    Defendant used at least Twitter, including on and in each of her own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff

without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

68.   On information and belief, defendant did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

69.   Prior to publishing the defamatory statements, defendant was fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

70.   Prior to publishing the defamatory statements, defendant was fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

71.   Prior to publishing the defamatory statements, defendant was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendant did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because

Complaint for Damages and
Demand for Jury Trial

defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

72.     Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendant was fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

73.     Defendant was fully aware that Defendant's defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendant intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further wrestling promotions. In addition, defendant was fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

74.     It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

75.     Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in

Complaint for Damages and
Demand for Jury Trial

fact, implored defendant to stop the publication of the defamatory statements. Defendant responded by repeating more statements that (1) Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

76.    Prior to publishing the defamatory statements, defendant knew and otherwise were fully aware that the defamatory statements were not true.

77.    Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

78.    Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

79.    The hundreds to thousands of person who did read defendant's defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by

Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

80.    Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

(1)The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and wrestling promotor;

(2)The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3)The defamatory statements discouraged others from associating or dealing with Plaintiff.

81.    Defendant knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

82.    Defendant's defamatory statements caused Plaintiff to lose employment and income.

83.    Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused

Complaint for Damages and
Demand for Jury Trial

Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

84.    Plaintiff's personal and professional reputation were harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendant continues to make the same defamatory statements as described and continues to permit the defamatory statements to go viral on social media websites.

85.    Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

86.    Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below.

### III.CLAIM III

(Trade Libel against defendant)

87.    Plaintiff incorporates by reference paragraphs 1 through 86 as though fully set forth herein.

88.    Defendant made and published the defamatory statements as specifically described above, which among other things falsely accused Plaintiff of committing and rendering unprofessional and substandard services as a professional wrestler, wrestling promotor, and additionally tarnished the "Joey Ryan" brand name. Plaintiff has spent over twenty years in developing his brand by promoting his wrestling, personality, and character portrayal of "Joey Ryan" more immediately, through social

Complaint for Damages and
Demand for Jury Trial

media websites, including Twitter, Facebook, YouTube, Patreon and Cameo. Patreon and Cameo garnered monthly revenues to Plaintiff. The Joey Ryan brand also generated revenues in merchandising, ironically purchased by some of Joey Ryan's false accusers.

89.   Defendant made and published the defamatory statements as specifically described above and herein,

     a. Woodard Defamatory Statement

90.   Defendant used at least Twitter, including on and in each of her own Twitter subscriptions, accounts, identities, and handles, to write, and thereby publish, the defamatory statements described above and incorporated by reference herein, which included, that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

91.   On information and belief, defendant did use other social media websites to write, and thereby publish, the defamatory statements described above and incorporated by reference herein.

92.   Prior to publishing the defamatory statements, defendant was fully aware that Twitter and the other social media websites used to publish defendant's defamatory statements described above and incorporated by reference herein had members and subscribers located worldwide and were connected to the professional wrestling industry, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

Complaint for Damages and
Demand for Jury Trial

93.   Prior to publishing the defamatory statements, defendant was fully aware that Twitter had a membership of approximately in excess of three hundred million persons and that by publishing the defamatory statements, the defamatory statements would be read by hundreds to thousands of Twitter's membership, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

94.   Prior to publishing the defamatory statements, defendant was fully aware that publishing the defamatory statements described above and incorporated by reference herein would reach the eyes and ears of at least hundreds to thousands of persons, and that after defendant did publish the defamatory statements described above and incorporated by reference herein that the published defamatory statements did reach the eyes and ears of at least hundreds to thousands of persons, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

95.   Defendant published the defamatory statements described above and incorporated by reference herein fully aware that Plaintiff lived in Los Angeles, California and that Plaintiff was a professional wrestler and promotor in the state of California. Defendant was fully aware that Plaintiff was a principal of Bar Wrestling and that Bar Wrestling promoted wrestling matches in bars in Los Angeles, California.

96.   Defendant was fully aware that Defendant's defamatory statements described above and incorporated by reference herein would cause a negative effect on Plaintiff as a professional wrestler and wrestling promotor, i.e., defendant intended that the defamatory statements would prevent Plaintiff from practicing as a professional wrestler and further

wrestling promotions. In addition, defendant was fully aware that because of the defamatory statements, Plaintiff's reputation would be damaged in the community in California and the virtual community located in the world-wide-web that were related to Plaintiff's as a professional wrestler and wrestling promotor

97.   It was, is, and has always been, untrue, and false, that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

98.   Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in fact, implored defendant to stop the publication of the defamatory statements. Defendant responded by repeating more statements that (1) Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

99.   Prior to publishing the defamatory statements, defendant knew and otherwise were fully aware that the defamatory statements were not true.

100.  Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

101.  Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

102.  The hundreds to thousands of person who did read defendant's defamatory statements on Twitter and other social media websites understood the defamatory statements to be of and concerning Plaintiff and were understood by the hundreds to thousands of persons to mean that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

103.  Because of the facts and circumstances that were known to the hundreds to thousands of readers of the defamatory statements, including that Plaintiff was a professional wrestler and wrestling promotor in California,

(1) The defamatory statements tended to injure Plaintiff as a professional wrestler and wrestling promotor, and otherwise injure Plaintiff whether or not as a professional wrestler and wrestling promotor;

(2) The defamatory statements exposed Plaintiff to hatred, contempt, ridicule, and shame by (1) persons residing in California; (2) persons involved and interested in professional wrestling and wrestling promotions; and (4) those persons using the world-wide-web interested in Plaintiff, professional wrestling and wrestling promotions; and

(3) The defamatory statements discouraged others from associating or

Complaint for Damages and
Demand for Jury Trial

dealing with Plaintiff.

104.  Defendant knew that the listeners and readers of the defamatory statements would be compelled to republish the defamatory statements to others by word of mouth, electronic communication and through social media websites and the persons who did hear and did read the defamatory statements did republish the defamatory statements to others, because defendant was a user, subscriber and account holder of Twitter and had Twitter handles and thus understood how Twitter and social media websites worked.

105.  Defendant's defamatory statements caused Plaintiff to lose employment and income.

106.  Defendant's defamatory statements caused Plaintiff's California and virtual community to shun him, avoid him and hate him and further caused Plaintiff's California and virtual community to stop being his friend, stop following him, or otherwise end any, and all, connection and association to Plaintiff.

107.  Plaintiff's personal and professional reputation were harmed as a result of defendant's defamatory statements and such reputation is continuing to be harmed because defendant continues to make the same defamatory statements as described and continues to permit the defamatory statements to go viral on social media websites.

108.  Plaintiff sustained reputational and financial harm to his businesses, professions and occupations as a result of the defamatory statements.

109.  Plaintiff was damaged as set forth below and as follows,

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory

statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below

### IV.CLAIM IV

(False Light against defendant)

110.  Plaintiff incorporates by reference paragraphs 1 through 109 as though fully set forth herein.

111.  Defendant published the defamatory statements as specifically described above and incorporated herein, as

     a.  Woodard Defamatory Statement.

and the statements showed Plaintiff in a false light.

112.  The false light was highly offensive to a reasonable person in Plaintiff's position, because Plaintiff did not rape, assault, commit sexual battery on any person.

113.  Defendant knew that the publication of the defamatory statements would create a false impression that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation.

114.  Defendant's defamatory statements were not privileged and Plaintiff did not consent to the publication of the defamatory statements. Plaintiff, in

fact, implored defendant to stop the publication of the defamatory statements.

115.  Prior to publishing the defamatory statements, defendant knew that publishing the defamatory statements would create a false impression about Plaintiff.

116.  Prior to publishing the defamatory statements, defendant acted in reckless disregard for the truth in the defamatory statements by not conducting any diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

117.  Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

118.  Plaintiff sustained reputational and financial harm as result of defendant's publication of the defamatory statements.

WHEREFORE Plaintiff requests that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements and any equitable relief based on principles that are fair and just.

WHEREFORE, Plaintiff prays for judgment as further set forth below

## V.CLAIM V

(Intentional Infliction of Emotional Distress against defendant)

119.  Plaintiff incorporates by reference paragraphs 1 through 118 as though fully set forth herein.

120.  Defendant published the defamatory statements as specifically described above and incorporated herein, as

a.  Woodard Defamatory Statement

121.  Defendant's conduct was outrageous.

122.  Defendant's conduct was intended by each defendant, or carried out in reckless disregard, to cause Plaintiff emotional distress.

123.  Plaintiff suffered severe emotional distress.

124.  Defendant's conduct was a substantial factor in causing Plaintiff's emotional distress.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below

### VI.CLAIM VI

(Negligent Infliction of Emotional Distress against defendant)

125.  Plaintiff incorporates by reference paragraphs 1 through 124 as though fully set forth herein.

126.  Defendant published the defamatory statements as specifically described above and incorporated herein as,

a.  Woodard Defamatory Statement

127.  Prior to publishing the defamatory statements, defendant failed to use reasonable care to determine the truth or falsity in the defamatory statements by not conducting reasonable diligence, inquiry and investigation as to whether or not the defamatory statements were true or false.

128.  Defendant was at least negligent.

129.  Plaintiff suffered severe emotional distress.

130.  Defendant's negligent conduct was a substantial factor in causing

Plaintiff's emotional distress.

WHEREFORE Plaintiff prays that this court grant relief in compensatory damages against each defendant and in favor of Plaintiff in the amount of $5,000.000.00, for an order retracting and correcting the defamatory statements, for equitable relief based on principles that are fair and just, and for judgment as also set forth below.

WHEREFORE, Plaintiff prays for judgment as further set forth below

### VII.CLAIM VII

(Injunctive Relief - against defendant)

131.  Plaintiff incorporates by reference paragraphs 1 through 130 as though fully set forth herein.

132.  Defendant has caused irreparable harm to Plaintiff's businesses, in reputation, in income, in the goodwill in the business that no amount of damages could adequately compensate Plaintiff for injuries he sustained, is sustaining and will sustain, because defendant's defamatory statements continue to be posted on internet websites such as Twitter, and defendant continues to assert that the statements are true thereby destroying Plaintiff's reputation and business in an ongoing and continuous manner.

133.  Defendant continues to publish the defamatory statements on social media making it impossible for Plaintiff to practice as a professional wrestler and wrestling promotor and thus limiting Plaintiff's income, making the harm ongoing.

134.  Defendant's conduct is a substantial factor in Plaintiff's ongoing harm.

135.  Plaintiff prays this court for an order enjoining defendant from making and publishing any, and all, defamatory statements that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff

without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation

136.  Plaintiff prays this court for an injunction ordering to retract the defamatory statements and to take the defamatory statements down from the websites in which the statements were made and published; specifically defendant should retract and take down any, and all, defamatory statements made and published by defendant that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat and intimidation; and any iteration of such statements.

## VIII.CLAIM VIII

### (Declaratory Relief against Defendant)

137.  Plaintiff incorporates by reference paragraphs 1 through 136 as though fully set forth herein.

138.  So that Plaintiff may present to social media websites that the herein defamatory statements violate the terms and conditions of social media websites, if they do, regarding publication of false and defamatory statements that tend to harass and harm other persons, Plaintiff prays that this this court declare as false statements that (1)  Plaintiff assaulted defendant; (2) Plaintiff committed a sexual battery on defendant; (3) Plaintiff committed (1) and (2) in a manner that would be considered a felony;(4) defendant engaged in sexual acts with Plaintiff without Defendant's consent; and/or (5) defendant was forced by Plaintiff to engage in sexual acts with Plaintiff, forced meaning the use of fear, threat

and intimidation

# **PRAYER FOR RELIEF**

Plaintiff, MEEHAN, prays as to the first through eighth claims:

1.    Award Plaintiff $200,000.00 in economic damages as to each defendant or the amount lost by Plaintiff as a result of defendant's conduct multiplied by the months from June 21, 2020 to the date of the award of economic damages;

2.    Award Plaintiff $5,000,000.00 as to each defendant in non-economic damages.

3.    Order an injunction permanently restraining and enjoining defendant as set forth in Claim VII including:

a. Preventing defendant from making and publishing the defamatory statements or any iteration of the defamatory statements as set forth above and herein;

b.  Ordering defendant to retract the defamatory statements as set forth above and herein;

c. Ordering defendant to direct any, and all, websites that defendant posted the defamatory statements as set forth above and herein, to delete the defamatory statements;

4.    Award Plaintiff his actual damages;

5.    Award Plaintiff his costs, investigatory fees and expenses to the fullest extent provided by law;

6.    Award punitive and exemplary damages against defendant and in favor of Plaintiff in the sum of $10,000,000.00 by reason of defendant's malice, hatred, ill-will, despicable and intentional acts.

////

Complaint for Damages and
Demand for Jury Trial

7. Awarding Plaintiff such additional and further relief as the Court deems just and proper.

Dated:  October 7, 2020

UTZURRUM LAW OFFICES, A.P.C.


By: _____/s/ Joe Utzurrum_____

Joe Utzurrum, Attorney for Plaintiff,

JOSEPH R. MEEHAN

1  UTZURRUM LAW OFFICES, A.P.C.
   Joe Utzurrum, Esq.
   Cal Bar Number 171701
2  11620 Wilshire Blvd. Ste. 900
   Los Angeles, California 90025
3  Tele 310.887.1837
   Email joe@ulawoffices.com
4

5  Attorneys for Plaintiff, JOSEPH R.
   MEEHAN
6

7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11 JOSEPH R. MEEHAN,              )  Case No.
                                  )
12            Plaintiff,          )  DEMAND FOR JURY TRIAL
                                  )
13       vs.                      )
                                  )
14 ALLISON WOODARD,               )
                                  )
15                                )
              Defendant.          )
16                                )
                                  )
17 _____ )

18       Plaintiff, JOSEPH R. MEEHAN, hereby, by and through its counsel of

19 record, request and demand that the case and matters therein be tried in

20 front of a jury.

   Dated:  October 7, 2020
21
                              UTZURRUM LAW OFFICES, A.P.C.
22

23

24

25              By: _____/s/ Joe Utzurrum_____

26              Joe Utzurrum, Attorney for Plaintiff,

27              JOSEPH R. MEEHAN

28
                                          _____
                                          Complaint for Damages and
                                          Demand for Jury Trial